### 1758. WILLIAMS v. THE STATE.

1. A contract "to pull and tie a certain fourteen-acre tract of fodder on the Barrow place when the same is ready to be pulled, at the rate of 60 cents per day, or 70 cents per hundred bundles," is sufficiently definite as to time of beginning, work to be performed, and wages to be paid.

2. The evidence, taken in connection with the defendant's statement, affirmatively shows that there was no intent to defraud when the provisions were procured from the prosecutor by the defendant on his labor contract; and, therefore, the verdict was unauthorized.

Accusation of cheating and swindling, from city court of Leesburg—Judge Long. February 18, 1908.

Submitted March 30,—Decided May 4, 1909.

*Howell B. Simmons,* for plaintiff in error.

*W. G. Martin, solicitor,* contra.

HILL, C. J. Plaintiff in error was convicted of a violation of the act of 1903 (Acts 1903, p. 90) providing for punishment of those who, with fraudulent intent, procure advances on the faith of contracts of labor. The evidence, briefly stated, is as follows: According to the prosecutor, the defendant came to his place and wanted some provisions, and he let him have "one sack of flour worth 80 cents; 4 pounds of meat, 45 cents; 1 plug of tobacco, 15 cents; and a package of soda, 5 cents," on the promise of the defendant that he would "pull and tie a certain fourteen-acre tract of fodder on the Barrow place when the same was ready to be pulled," and he to pay the defendant for this work at the rate of 60 cents per day, or 70 cents per hundred bundles. The defendant never pulled the fodder or paid for the provisions. At the time that the agreement was made with the defendant he was working on a neighboring farm for Mr. Bryant, who got sick in the summer of that year, and died in the fall. The prosecutor testified that he frequently saw the defendant and never made any demand on him to pull the fodder or to return the money, nor informed him that the fodder was ready to be pulled. He also swore that the defendant came to see him about pulling the fodder, but it was "after everybody in the neighborhood had finished pulling fodder." This was all the evidence for the State.

The defendant, in his statement to the jury, admitted that he had made the contract in question with the prosecutor and had received from him the provisions named in the accusation. He gave as a reason why he was late in his offer to perform his contract the fact that his employer, Mr. Bryant, was taken sick in the summer, and he was kept busy waiting on him until he died in the fall, and that after his employer's death he helped the widow gather her crop. He stated that after he had finished helping

gather the crop for the widow, he went to Mr. Scott, the prosecutor, to pull the fodder for him according to his contract, and found that the fodder had been pulled; that he then made an arrangement with his "boss" to pay all that he owed the prosecutor, and he did not know that the claim of Mr. Scott had not been paid, until he had him arrested a year later.

It is insisted that the evidence in this case is not sufficient to warrant a conviction, because the alleged contract was not definite as to the time it was to begin or end, or as to the labor to be performed. We do not concur in this opinion. We think the contract was definite in every particular. The defendant was to do a definite, specified piece of work, for a definite, specified wage (to pull and tie a certain fourteen-acre tract of fodder on the Barrow place when the same was ready to be pulled), for which the defendant was to be paid at the rate of sixty cents per day, or seventy cents per hundred bundles. The defendant agreed to pull the fodder when "ready to be pulled." We think, howeyer, that the prosecutor should have informed the defendant when his fodder was ready to be pulled, in view of the fact that the defendant, according to the prosecutor's own testimony, was permanently employed elsewhere and was only to do this special piece of work for the prosecutor "when the fodder was ready to be pulled." Now, the prosecutor testifies that he saw the defendant every day, but made no demand on him to do the work, and did not inform him that the fodder was ready to be pulled. All fodder does not ripen at the same time; and the fact that defendant was late in offering to perform his contract was not material, unless it was necessary to pull and tie the fodder before he offered to perform. It does not appear, from the evidence, that it became necessary for the prosecutor's fodder to be pulled before the defendant offered to pull it. It may have been "late corn," and the best agriculturists differ as to the stage of ripeness when fodder should be pulled (so says Russell, J.). The defendant in his statement gave good reasons why he was delayed in performing his contract. He was compelled to wait on his employer, who was sick during the whole summer, and to help gather the crop for the widow after his employer had died. We are clear that the evidence in this case, taken in connection with the defendant's statement (which on material facts it fully corroborates), proves

that the defendant had no fraudulent intent when he procured from the prosecutor the small quantity of provisions on his promise to do the particular work; and for this reason the verdict of guilty was unauthorized, and a new trial should have been granted.

*Judgment reversed.*